# IN THE COURT OF APPEALS OF IOWA

No. 17-1574
Filed June 19, 2019

**DANIEL SAMUEL JASON,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Chad A. Kepros, Judge.

Daniel Jason appeals the district court's denial of his two applications for postconviction relief. **AFFIRMED.**

Lanny M. Van Daele of Van Daele Law, LLC, North Liberty, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., May, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**PER CURIAM.**

In 2007, Daniel Jason was convicted of simple assault and three counts of harassment concerning his unwanted actions toward his former girlfriend, C.C. A previously-entered no-contact order was extended for five years. "Contrary to Jason's declaration at [the] sentencing hearing that he would never contact [C.C.] again," he contacted her just hours after his release from jail. *See State v. Jason*, No. 14-1162, 2015 WL 6510334, at *1 (Iowa Ct. App. Oct. 28, 2015) (hereinafter *Jason II*).

Jason's conduct toward C.C. persisted. In 2007, he was convicted by a jury of stalking in violation of a no-contact order and tampering with a witness. On direct appeal, this court affirmed his convictions but ordered a limited remand to apply *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008), to determine whether Jason "was competent to stand trial, but not competent to take on the expanded role of representing himself at trial." *State v. Jason*, 779 N.W.2d 66, 75–76 (Iowa Ct. App. 2009).[1] The court also ordered resentencing, finding the district court "did not provide any reasons for its decision to impose consecutive sentences." *Id.* at 77.

On remand, following a "meaningful hearing," the district court concluded Jason was competent to represent himself at trial. Meanwhile, separate from the hearing and court's decision, the parties stipulated Jason was competent to

---

[1] Jason is "an intelligent man with a photographic memory. When he was fifteen, he was diagnosed with Asperger's Syndrome, a high-functioning autistic spectrum disorder." *Jason II*, 2015 WL 6510334, at *1. According to Jason, "the disorder 'impairs [one's] ability to interact with others, to understand social cues, to have eye contact, to understand the [reciprocity] in social relationships and people's feelings . . . . Also some . . . problems with impulse control.'" *Id.* (alterations in original).

represent himself at trial and that his sentences should run concurrently. The court imposed concurrent sentences.

Upon his release from prison in 2012, Jason resumed contact with C.C. despite the no-contact order still in effect, "starting her ordeal all over again." *Jason II*, 2015 WL 6510334, at *2. In 2014, following a bench trial, Jason was convicted of stalking in violation of a no-contact order and two counts of extortion, enhanced as an habitual offender. On direct appeal, this court affirmed his convictions. *See id.* at *14.

Jason filed two postconviction-relief (PCR) applications: in 2011, he filed PCCV073198, challenging his 2007 convictions and 2010 sentence (a prerequisite for his subsequent habitual-offender enhancements); and in 2015, he filed PCCV077747, challenging his 2014 convictions. The two applications were consolidated, and a trial took place over two days in 2017. Thereafter, the district court entered a ruling denying Jason's applications.

On appeal,[2] Jason contends his trial counsel in 2010 was ineffective in failing to challenge his competency to represent himself at his 2007 trial; his trial counsel in 2014 was ineffective in allowing him to waive a jury trial, failing to object at sentencing when the State introduced a risk-assessment report, failing to demand a "guilty-plea like colloquy" before he stipulated to the issue of identity during the "habitual-offender phase," failing to renew his motion for new trial "upon learning of the court's impartial bias," failing to challenge the sufficiency of the evidence to prove extortion, and failing to advise him to accept a plea offer. He

---

[2] We decline Jason's request to change our decision to hear his appeal without oral argument.

also asserts this court applied the wrong standard in evaluating his challenge to the denial of his motions for recusal in *Jason II*, 2015 WL 6510334, at *6–7. In a pro se brief, Jason contends his PCR counsel was ineffective in failing to "raise ineffective appellate counsel claims" regarding the district court's refusal to let him represent himself at his 2014 trial.[3]

On our de novo review,[4] we agree with the district court's well-reasoned findings and conclusions in its thorough and detailed ruling. With the exception of Jason's pro se claim regarding PCR counsel,[5] the court considered each of the issues raised in this appeal and provided a thorough and meaningful analysis of each issue. We agree with the ruling of the district court, and we affirm without further opinion. *See* Iowa Ct. R. 21.26(1)(b), (d), and (e).

**AFFIRMED.**

---

[3] Jason also raises two additional pro se claims which are cumulative to issues raised by counsel and noted above.

[4] Although we generally review PCR proceedings for correction of errors at law, we review constitutional claims de novo. *See Diaz v. State*, 896 N.W.2d 723, 727 (Iowa 2017).

[5] Jason states, "How can I be competent to represent myself in 2010, yet in 2013 I'm not able to." The State counters that Jason's claim is "incompatible with another claim" because it "would require establishing that Jason was competent to represent himself (and not disruptive)," and accordingly, "Jason cannot prove breach" where "counsel necessarily [made a] judgment call[] in deciding between two potentially inconsistent claims."

We agree the claim is facially inconsistent, but we believe the record is inadequate to resolve the issue on direct appeal. *See State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018) ("If the record is insufficient to allow for a review on direct appeal, we do not reach the issue on direct appeal and allow the defendant to raise the claim in a separate postconviction-relief action."); *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012) (observing such claims are ordinarily preserved for PCR proceedings "particularly . . . where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues" (citation omitted)). Accordingly, we preserve the claim for a possible postconviction-relief action. *Cf. Harris*, 919 N.W.2d at 754.